UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATALIE R. VOGEL, | Case No. ED CV 15-1454-SP |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration, | |
| Defendant. | |

**I.**

**INTRODUCTION**

On July 21, 2015, plaintiff Natalie R. Vogel filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). Both plaintiff and defendant have consented to proceed for all purposes before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). The court deems the matter suitable for adjudication without oral argument.

Plaintiff presents two issues for decision: (1) whether the Administrative Law Judge ("ALJ") properly considered the opinion of plaintiff's treating physician; and (2) whether the ALJ erred at step five. Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 3-18; Memorandum in Support of Defendant's Answer ("D. Mem.") at 2-13.

Having carefully studied the parties' written submissions, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ did not err. Consequently, the court affirms the decision of the Commissioner denying benefits.

## II.

## **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff, who was forty-one years old on her alleged disability onset date, has a GED. AR at 213, 218. Plaintiff has past relevant work as an in-home care worker and a reservations clerk. *Id*. at 86.

On July 18 and 20, 2011, plaintiff filed applications for a period of disability, DIB, and SSI due to depression, "female problems," surgeries, and anxiety. *Id*. at 197, 213, 217. The applications were denied initially and upon reconsideration, after which plaintiff filed a request for a hearing. *Id*. at 116-31.

Plaintiff, representing herself, appeared at a hearing before the ALJ on May 31, 2013. *Id*. at 91-111. After the ALJ informed plaintiff about the role a representative would play in a hearing, plaintiff elected to retain representation and reschedule the hearing. *See id*. On August 16, 2013, plaintiff, represented by counsel, appeared and testified at a supplemental hearing. *Id*. at 63-90. The ALJ also heard testimony from Corinne Porter, a vocational expert ("VE"). *Id*. at 86-89. On August 28, 2013, the ALJ denied plaintiff's claims for benefits. *Id*. at 47-57.

Applying the well-known five-step sequential evaluation process, the ALJ

found, at step one, that plaintiff had not engaged in substantial gainful activity since February 15, 2011, the alleged onset date. *Id.* at 49.

At step two, the ALJ found plaintiff suffered from the following severe impairments: irritable bowel syndrome and intestinal obstruction status post gastric bypass surgery in 2006; gastroespohageal reflux disease ("GERD"); anxiety; and depression. *Id.*

At step three, the ALJ found plaintiff's impairments, whether individually or in combination with other impairments, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the "Listings"). *Id.* at 50.

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[1] and determined she had the RFC to perform light work with the limitations that she could: stand or walk four hours in an eight-hour workday but for no more than ten minutes at one time; sit six hours in an eight-hour workday with brief position changes after approximately thirty minutes; and occasionally bend, stoop, climb stairs, and balance. *Id*. at 52. The ALJ precluded from: climbing ladders, ropes, or scaffolds; kneeling; crawling; squatting; crouching; working at unprotected heights, around moving machinery, or other hazards; working at jobs requiring hypervigilance or intense concentration on a particular task; and working at a job requiring fast-paced production or assembly. *Id*. Finally, the ALJ found that plaintiff must have ready access to a restroom within the same building and is likely to be off task ten percent of the workday and workweek due to fatigue. *Id*.

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

The ALJ found, at step four, that plaintiff could not perform her past relevant work as an in-home care worker and reservation clerk. *Id.* at 55.

At step five, the ALJ determined that, based upon plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that plaintiff could perform, including addresser, tube operator, and document preparer. *Id*. at 56. Consequently, the ALJ concluded plaintiff did not suffer from a disability as defined by the Social Security Act ("SSA"). *Id.* at 57.

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. *Id.* at 1-4. The ALJ's decision stands as the final decision of the Commissioner.

## III.

## **STANDARD OF REVIEW**

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's

finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.
## DISCUSSION

### A. The ALJ Provided Specific and Legitimate Reasons for Rejecting the Opinion of Plaintiff's Treating Physician

Plaintiff argues that the ALJ failed to properly consider the opinion of a treating physician, Dr. Subbarayan Krishnan. P. Mem. at 3-11. Plaintiff contends that none of the reasons the ALJ provided for rejecting Dr. Krishnan's opinion were specific and legitimate. *Id.*

In determining whether a claimant has a medically determinable impairment, among the evidence the ALJ considers is medical evidence. 20 C.F.R. §§ 404.1527(b), 416.927(b). In evaluating medical opinions, the regulations distinguish among three types of physicians: (1) treating physicians; (2) examining physicians; and (3) non-examining physicians. 20 C.F.R. §§ 404.1527(c), (e), 416.927(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-

(2). The opinion of the treating physician is generally given the greatest weight because the treating physician is employed to cure and has a greater opportunity to understand and observe a claimant. *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Nevertheless, the ALJ is not bound by the opinion of the treating physician. *Smolen*, 80 F.3d at 1285. If a treating physician's opinion is uncontradicted, the ALJ must provide clear and convincing reasons for giving it less weight. *Lester*, 81 F.3d at 830. If the treating physician's opinion is contradicted by other opinions, the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting it. *Id.* Likewise, the ALJ must provide specific and legitimate reasons supported by substantial evidence in rejecting the contradicted opinions of examining physicians. *Id.* at 830-31. The opinion of a non-examining physician, standing alone, cannot constitute substantial evidence. *Widmark v. Barnhart*, 454 F.3d 1063, 1066 n.2 (9th Cir. 2006); *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *see also Erickson v. Shalala*, 9 F.3d 813, 818 n.7 (9th Cir. 1993).

**1.     Opinions Regarding Plaintiff's Physical Limitations**

From the alleged onset date of disability through the date of the supplemental hearing, plaintiff was treated by Dr. Jaime Perea, an obstetrician/gynecologist, Dr. S.G. Sharif, a family practitioner, and various physicians at the Hemet Valley Medical Center. Their treatment notes indicate that during this time period, plaintiff was treated for a variety of ailments including ovarian cysts, menorrhagia, abdominal pain, chest pain, nausea, and vomiting. *See, e.g.,* AR at 292-93, 320, 325, 328, 349, 528. The physicians diagnosed plaintiff with, among other things, moderate GERD, gastritis, and iron deficiency anemia. *See, e.g., id.* at 349, 362, 457, 483. The treatment notes also indicate that plaintiff engaged in drug seeking behavior and was narcotic dependent. *See, e.g., id.* at 367,

494, 578.  None of these treating physicians provided an opinion regarding plaintiff's functional limitations.

Dr. Subbarayan Krishnan, an internist, treated plaintiff on three occasions as of the date of the supplemental hearing.  *See id*. at 74.  The record does not contain any of Dr. Krishnan's treatment notes.  In a letter dated May 31, 2013, Dr. Krishnan wrote that plaintiff suffered from iron deficiency anemia secondary to bariatric surgery, chronic gastritis, bleeding peptic ulcers, chronic abdominal pain, and severe anxiety.  *Id*. at 744.  Dr. Krishnan also completed two opinions dated July 22, 2013 regarding plaintiff's mental and physical limitations.  *Id*. at 746-50.  In his opinion concerning plaintiff's physical limitations, Dr. Krishnan opined that plaintiff:  could lift and carry less than ten pounds; could stand, walk, and sit about two hours in an eight-hour workday; needed to change positions every twenty minutes; needed to walk around for twenty minutes every twenty minutes; could occasionally twist, stoop, crouch, and climb stairs; could never climb ladders; and must avoid concentrated exposure to extreme cold or heat, wetness, humidity, fumes, odors, dust, gases, and hazards.  *Id*. at 748-50.

Dr. Robin Alleyne, an internist, examined plaintiff on September 25, 2012.  *Id*. at 561-65.  Dr. Alleyne observed that plaintiff had a limited ability to crouch, limited forward flexion in the back, bilateral nonpitting edema in her hips, and otherwise normal findings.  *Id*.  Based on plaintiff's medical history and examination, Dr. Alleyne's impression was plaintiff suffered from a history of gastrointenstinal issues including GERD, history of iron deficiency anemia, history of bilateral leg edema which appeared consistent with lymphedema, and a new onset of right-sided numbness in the past twenty-four hours.  *Id*. at 564.  Dr. Alleyne opined that plaintiff could:  lift and carry fifty pounds occasionally and twenty-five pounds frequently; walk and stand six hours out of an eight-hour workday; and frequently push, pull, climb, balance, kneel, crawl, walk on uneven

1  terrain, climb ladders, and work at heights. *Id*. at 564.
2      Dr. F. Greene and Dr. Chan, state agency physicians, both opined that
3  plaintiff was capable of light work with the limitations that plaintiff could lift
4  twenty pounds occasionally and ten pounds frequently and stand and walk up to six
5  hours in a normal eight-hour work day *Id*. at 418-22, 566. In addition, Dr. Greene
6  opined that plaintiff was limited to: frequent climbing of ramps and stairs,
7  balancing, kneeling, and crawling; and occasional crouching and stooping. *Id*. at
8  420. Dr. Greene also precluded plaintiff from climbing ladders, ropes and
9  scaffolds. *Id*.

### 2. Opinions Regarding Plaintiff's Mental Limitations

    As just noted, Dr. Krishnan's May 31, 2013 letter stated plaintiff suffered from, inter alia, severe anxiety. *Id.* at 744. In addition, on July 22, 2013, Dr. Krishman completed an opinion concerning plaintiff's mental limitations. Dr. Krishnan opined that plaintiff had a limited but satisfactory ability to, among other things, maintain attention for two-hour segments, sustain an ordinary routine, and complete a normal workday, and a seriously limited ability to make simple work-related decisions, get along with co-workers, carry out detailed instructions, and deal with normal work stress. *Id*. at 746. Dr. Krishnan indicated that these limitations have lasted one year or more. *Id*. at 747.

    Dr. Romualdo R. Rodriguez, a consultative psychiatrist, examined plaintiff on December 19, 2011. *Id*. at 309-15. Dr. Romualdo observed plaintiff had good interpersonal contact, was coherent; had normal speech; and was alert and oriented. *Id*. at 312. Dr. Romualdo noted that plaintiff denied illegal drug use but stated that she had been psychiatrically hospitalized after physicians found morphine and multiple drugs in her system. *See id*. at 310, 314. Dr. Rodriguez's diagnostic impression was plaintiff had a depressive disorder and an anxiety disorder, but that with proper treatment, plaintiff "could easily recover from her symptoms" within

twelve months. *Id*. at 313-14.  Based on the examination, Dr. Rodriquez opined plaintiff was able to understand, remember, and carry out simple one- or two-step instructions and do detailed and complex instructions. *Id*. at 315.  In addition, plaintiff was slightly limited in her ability to:  relate and interact with supervisors, coworkers, and the public; maintain concentration and attention, persistence, and pace; adapt to the stresses common to a normal work environment; maintain regular attendance in the work place and perform work activities on a consistent basis; and perform work activities without special or additional supervision. *Id*.

Dr. Thaworn Rathana-Nakintara, a consultative psychiatrist, examined plaintiff on September 23, 2012. *See id.* at 556-60.  Plaintiff reported to Dr. Rathana-Nakintara that she was hospitalized before for taking too many sleeping pills. *Id*. at 556-57.  Plaintiff also reported to Dr. Rathana-Nakintara that her total hysterectomy changed her life, her cancer diagnosis took everything away from her, and she had a mild stroke ten months ago.[2] *Id*. at 559.  Dr. Rathana-Nakintara observed plaintiff was cooperative, maintained eye contact, had fluent speech, was well responsive, and had linear thought processes. *Id*. at 558.  Based on the mental status examination, Dr. Rathana-Nakintara diagnosed plaintiff with adjustment disorder. *Id*. at 559.  Dr. Rathana-Nakintara opined that plaintiff would have:  no limitations performing simple and repetitive tasks; mild limitations performing detailed and complex tasks; no difficulties in her ability to perform work activities on a consistent basis without special or additional supervision; no limitations completing a normal workday or work week; no limitations accepting instructions from supervisors and interacting with coworkers and the public; and no difficulties to be able to handle the usual stresses, changes, and demands of employment. *Id*.

### 3.     The ALJ's Determination

---

[2]   There are no documents in the Administrative Record to support plaintiff's assertions that she had cancer or a stroke.

9

Here, the ALJ determined plaintiff could perform light work with many limitations including: stand or walk for four hours in an eight-hour workday but for no more than ten minutes at one time; sit for six hours in an eight-hour workday with brief position changes after approximately thirty minutes; occasionally bend, stoop, climb stairs, and balance; and no work at a job requiring fast-paced production or assembly. *See id*. at 52. In discussing how she reached her RFC determination, the ALJ's decision as a whole is not a model of clarity. The ALJ clearly stated she gave little weight to the opinion Dr. Krishnan. *Id*. at 55. But it is difficult to determine how much weight she gave to the other opinions. The ALJ stated she gave partial weight to the opinions of the state agency physicians, but found the determinations that plaintiff could perform medium work and did not have a severe mental impairment failed to adequately take into consideration plaintiff's subjective complaints.[3] *Id*. This appears to imply that the ALJ gave less weight to the opinions of the consultative examiners, but the ALJ did not expressly so state.

Nevertheless, the issue here is not whether the ALJ properly considered the opinions of the consultative examiners, bur rather whether the ALJ provided specific and legitimate reasons for rejecting Dr. Krishnan's opinion. The court finds that the ALJ provided some specific and legitimate reasons for rejecting Dr. Krishnan's opinion.

The ALJ's first two reasons for rejecting Dr. Krishnan's opinions were not specific and legitimate and supported by substantial evidence. First, the ALJ rejected Dr. Krishnan's opinion regarding plaintiff's physical limitations because it

---

[3] The ALJ's finding that aspects of the consultative examiners' opinions failed to adequately take into consideration plaintiff's subjective complaints appears inconsistent with the ALJ's determination that plaintiff's "credibility is highly suspect," although the ALJ stated her RFC determination "generously considers the claimant's subjective complaints." *See* AR at 53, 55.

10

was vague. *See id.* While vagueness is a specific and legitimate reason to reject an opinion, here, Dr. Krishnan's opinion was not vague.[4] *See Bray v. Comm'r*, 554 F.3d 1219, 1228 (9th Cir. 2009) (citation and quotations omitted) ("[T]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."). Dr. Krishnan's opinion provided specific limitations. *See* AR at 746-50. The ALJ's second reason for giving Dr. Krishnan's opinion less weight was because it was based on a limited treatment history. *See id*. at 55. The ALJ correctly noted that Dr. Krishnan had only treated plaintiff on three occasions and therefore did not have a significant longitudinal treating relationship with plaintiff. *See id*. That may be a sufficient reason for the ALJ to give greater weight to the opinion of a treating physician over Dr. Krishnan's or to not afford Dr. Krishnan's opinion the weight of a treating physician's opinion, but by itself was not a specific and legitimate reason for rejecting Dr. Krishnan's opinion. *See Tonapetyan*, 242 F.3d at 1149 (an opinion based on an independent examination alone constitutes substantial evidence).

The ALJ's remaining three reasons, however, were specific and legitimate. The ALJ's third reason for rejecting Dr. Krishnan's opinion was because it inconsistent with the medical evidence. *See* AR at 55; *Batson v. Comm'r*, 359 F.3d 1190, 1195 (9th Cir. 2004). As an initial matter, to the extent that the ALJ was asserting that Dr. Krishnan's opinion was inconsistent with the objective medical evidence because none existed, the court notes that Dr. Krishnan did not provide any treatment records and his opinion therefore appeared to be conclusory. *See Bray*, 554 F.3d at 1228. As for the objective medical evidence found in the

---

[4] To the extent the ALJ meant Dr. Krishnan's opinion is vague because it was conclusory and unsupported by treatment records, the court addresses that reason below.

treatment notes of plaintiff's treating physicians and Dr. Alleyne's report, that evidence did not support Dr. Krishnan's opined limitations. The treatment records indicate that plaintiff suffered from symptoms resulting from ovarian cysts, menorrhagia, GERD, gastritis, and anemia, but none of the treatment notes reflect objective findings to support limitations as severe as Dr. Krishnan opined. *See, e.g., id.* at 293, 330, 362, 457, 483. Despite plaintiff's complaints of nausea, vomiting, and pain, the objective tests and examinations, for the most part, showed no abnormalities other than GERD and gastritis. *See, e.g., id.* at 330, 339-40, 353-55, 370, 514, 534, 656. Instead, the treatment notes indicated that plaintiff's continued testing and treatment were often based on discredited subjective complaints, and that plaintiff engaged in drug-seeking behavior. *See, e.g., id.* at 367, 494, 534, 581-82. Similarly, Dr. Alleyne's objective findings were benign and did not support Dr. Krishnan's opinion. *See id.* at 561-65.

The ALJ's fourth reason for discounting Dr. Krishnan's opinion was because it was a checklist opinion. *Id.* at 55; *see Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir.1996) (opinions in the form of "check-off reports" may be rejected for lack of explanation of the bases for their conclusions). As noted above, Dr. Krishnan's opinions were not supported by clinical findings. Dr. Krishnan did not provide any treatment notes or cite any objective findings to support his conclusions. Dr. Krishnan only submitted the check-off opinions and a brief letter stating his opined diagnosis. *See* AR at 744-50.

Finally, the ALJ rejected Dr. Krishnan's opined mental limitations because Dr. Krishnan was not a mental health professional and his opinion was inconsistent with those of psychiatrists. *Id.* at 55. An ALJ may give the opinion of a specialist greater weight than that of a non-specialist. *See Reed v. Massanari,* 270 F.3d 838, 845 (9th Cir. 2001) (noting that the agency generally gives more weight to specialists than to the opinion of a medical source who is not a specialist). Dr.

12

Krishnan is an internist. Two examining psychiatrists and two state agency psychiatrists determined that plaintiff had only mild mental limitations and one, Dr. Rodriguez, opined that plaintiff could easily recover from her symptoms with treatment. *See* AR at 309-15, 407-17, 556-60, 568-69. As such, the fact that Dr. Krishnan was not a mental health specialist was a specific and legitimate reason for giving his opined mental limitations less weight.

Accordingly, the ALJ cited three specific and legitimate reasons supported by substantial evidence for rejecting the opinions of Dr. Krishnan.

**B.     The ALJ Did Not Err at Step Five**

Plaintiff argues that the ALJ erred at step five because her finding that there are other jobs plaintiff could perform was not supported by substantial evidence. P. Mem. at 11-18. Specifically, plaintiff contends that the vocational expert's testimony was inconsistent with the Dictionary of Occupational Titles ("DOT").

At step five, the burden shifts to the Commissioner to show that the claimant retains the ability to perform other gainful activity. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006). To support a finding that a claimant is not disabled at step five, the Commissioner must provide evidence demonstrating that other work exists in significant numbers in the national economy that the claimant can perform, given his or her age, education, work experience, and RFC. 20 C.F.R. §§ 404.1512(f), 416.912(f).

The Commissioner may meet his step five burden either by reference to the Medical-Vocational Guidelines at 20 C.F.R. part 404, Subpart P, Appendix 2 or by relying on the testimony of a VE and the DOT "in evaluating whether the claimant is able to perform other work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990) (citations omitted); *see Lounsburry*, 468 F.3d at 1114; *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001); Social Security

Ruling ("SSR") 83-12[5]; *see also* 20 C.F.R. §§ 404.1566(d)(1), 416.966(d)(1) (DOT is a source of reliable job information). The DOT is the rebuttable presumptive authority on job classifications. *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995). An ALJ may not rely on a VE's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the DOT, and if so, the reasons therefor. *Massachi*, 486 F.3d at 1152-53 (discussing SSR 00-4p).

In response to a hypothetical that includes the limitations the ALJ found credible, a VE may testify as to "(1) what jobs the claimant, given his or her [RFC], would be able to do; and (2) the availability of such jobs in the national economy." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). "A VE's recognized expertise provides the necessary foundation for his or her testimony." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). Accordingly, VE testimony is substantial evidence. *See Johnson*, 60 F.3d at 1435 ("'[T]he ALJ was within his rights to rely solely on the vocational expert's testimony.'") (quoting *Conn v. Sec'y*, 51 F.3d 607, 610 (6th Cir. 1995)); *see also Bayliss*, 427 F.3d at 1218, n.4 (Federal Rules of Evidence do not apply in social security hearings). But where the VE testimony is fundamentally flawed, remand is appropriate. *See, e.g., Farias v. Colvin*, 519 Fed. Appx. 439, 440 (9th Cir. 2013) (remand required where VE provided employment data for a different occupation than the one he opined claimant could perform).

At the August 16, 2013 hearing, in response to the ALJ's hypothetical

---

[5] "The Commissioner issues Social Security Rulings to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the SSA. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001) (internal citations omitted).

14

regarding a person with plaintiff's RFC, the VE testified that there were jobs the person would be able to perform including the jobs of addresser, tube operator, and document preparer. *See* AR at 88-89. The VE further testified that her testimony was consistent with the DOT. *Id*. at 89. In her decision, the ALJ noted that she relied on the testimony of the VE in her step five determination. *See id*. at 56.

The ALJ had determined that, in an eight-hour workday, plaintiff could only stand or walk for four hours but for no more than ten minutes at one time, and could sit for six hours but with brief position changes after approximately thirty minutes. AR at 52. Plaintiff contends that, taken together, the ALJ's standing, walking, and sitting limitations amounted to a sit/stand option, and that none of the DOT descriptions of the addresser, tube operator, and document preparer jobs discussed the availability of an option to alternate positions. *See* P. Mem. at 14. Plaintiff argues that, as such, the identified jobs conflicted with the DOT, but rather than testifying about whether the identified jobs conflicted with the DOT, the VE merely explained why no light work was available. *See id*.

Plaintiff's argument that the VE did not testify as to whether her testimony conflicted with the DOT is belied by the hearing transcript. The ALJ clearly asked the VE whether her testimony was consistent with the DOT, to which the VE replied in the affirmative. *See id*. at 89. Thus, the ALJ fulfilled her initial obligation to inquire whether the VE's testimony conflicted with the DOT.

The ALJ's obligations, however, did not end with the initial inquiry. Even where a VE testifies that there is no conflict, where "evidence from a VE 'appears to conflict with the DOT,' SSR 00-4p requires further inquiry: an ALJ must obtain 'a reasonable explanation for the apparent conflict.'" *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008) (quoting SSR 00-4p). Where the ALJ fails to obtain an explanation for and resolve an apparent conflict – even where the VE did not identify the conflict – the ALJ errs. *See Hernandez v. Astrue*, 2011 WL 223595, at

*2-5 (C.D. Cal. Jan. 21, 2011) (where VE incorrectly testified there was no conflict between her testimony and DOT, ALJ erred in relying on VE's testimony and failing to acknowledge or reconcile the conflict); *Mkhitaryan v. Astrue*, 2010 WL 1752162, at *3 (C.D. Cal. Apr. 27, 2010) ("Because the ALJ incorrectly adopted the VE's conclusion that there was no apparent conflict [and] the ALJ provided no explanation for the deviation," the ALJ "therefore committed legal error warranting remand.").

Here, the DOT is silent regarding a sit/stand option for the jobs in question. Thus, the issue is whether there was an apparent conflict when the DOT was silent about a particular limitation and, if so, whether the ALJ improperly relied on the VE's testimony in the face of evidence of an apparent conflict.

The Ninth Circuit has not issued binding precedent on the issue of whether there is an apparent conflict between VE testimony and the DOT when the DOT is silent about a limitation such as a sit/stand option, but has addressed it in unpublished decisions. In *Coleman v. Astrue*, 423 Fed. Appx. 754, 755 (9th Cir. 2011), the ALJ imposed a sit/stand option and the VE testified plaintiff could perform three jobs at the sedentary or light level. The Ninth Circuit held that the ALJ erred by failing to ask the VE if his testimony conflicted with the DOT. *Id*. at 756. It further found that there was an apparent conflict because many sedentary and light positions could not accommodate a sit/stand option and the VE's testimony was brief and speculative. *Id*. In *Buckner-Larkin v. Astrue*, 450 Fed. Appx. 626, 628-29 (9th Cir. 2011), the Ninth Circuit ruled that no conflict existed because the VE based his opinion that certain jobs would allow for an at-will sit/stand option on labor market surveys, experience, and research.

The district courts in this circuit are divided as to whether there is an apparent conflict between the testimony of a VE and the DOT when the DOT is silent about a particular limitation. Some of the courts have found that there is no

16

apparent conflict between VE testimony and the DOT when the DOT does not address the limitation. *See, e.g., Arellano v. Colvin*, 2016 WL 3031770, at *8 (C.D. Cal. May 25, 2016) (finding that the "DOT's failure to address [a particular limitation] does not, by itself, create an apparent conflict between the DOT and the VE's testimony."); *Doty v. Colvin*, 2016 WL 1089171, at *5 (C.D. Cal. Mar. 18, 2016) (no apparent conflict between the VE's testimony and DOT even though DOT descriptions did not include a sit/stand option); *Edwards v. Colvin*, 2015 WL 673441, at *4 (E.D. Cal. Feb. 17, 2015) (citing numerous cases that found a VE's testimony does not raise an apparent conflict with the DOT when the DOT does not discuss a sit/stand option); *Winder v. Colvin*, 2014 WL 4060010, at *4 (C.D. Cal. Aug. 14, 2014) (declining to find an apparent conflict when the DOT is silent about a particular limitation and counsel failed to raise the issue to the ALJ); *Strain v. Colvin*, 2014 WL 2472312, at *2 (C.D. Cal. Jun 2, 2014) ("Because the DOT does not address the subject of sit/stand option, it is not apparent that the testimony of the VE conflicts with the DOT."). But other district courts have reached the opposite conclusion. *See, e.g., Urena v. Colvin*, 2015 WL 5826786, at *5 (C.D. Cal. Sept. 30, 2015) (finding that there is an apparent conflict between the DOT requirements for jobs at the light exertional level that are silent as to a sit/stand option and VE testimony); *Smith v. Astrue*, 2010 WL 5776060, at *12 (N.D. Cal. Sept. 16, 2010) (when "the DOT does not address sit/stand options, the potential inconsistency between the [VE's] testimony and DOT warrants further inquiry on remand"); *Valenzuela v. Astrue*, 2009 WL 1537876, at *3 (N.D. Cal. June 2, 2009) (VE testimony conflicted with the DOT descriptions, which were silent as to a sit/stand option).

This court findings, at least on the facts of this case, that there was no apparent conflict between the VE's testimony and the DOT. First, unlike in *Coleman*, the VE did state her testimony was consistent with the DOT. Second, as

a matter of basic logic, it is difficult to see how there could be an "apparent" conflict where the DOT is silent as to whether the sit/stand option required here would be permitted. And third, contrary to plaintiff's assertion, it is clear that the VE here considered the pertinent sit/stand option. The VE testified that she was not citing any light level positions, in part because of the ten-minute increment limitations, thus indicating she was considering the sit/stand limitation. *See* AR at 88. VE testimony, by itself, constitutes substantial evidence when in response to a complete hypothetical. *See Bayliss*, 427 F.3d at 1218; *see also Zalesny v. Comm'r*, 2014 WL 4418215, at *3 (E.D. Cal. Sept. 5, 2014) ("[T]he ALJ may rely on vocational expert testimony, which constitutes 'reliable job information.'").

Finally, plaintiff had ample opportunity to cross-examine the VE regarding the sit/stand option at the hearing but chose not to. *See* AR at 89. The Ninth Circuit has held that claimants, when represented, "must raise all issues and evidence at their administrative hearings in order to preserve them on appeal." *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999) (plaintiff waived her right to argue that the VE's testimony concerning jobs numbers were wrong after failing to raise the issue at the hearing). Had plaintiff questioned the VE about the sit/stand option, plaintiff would have received a definitive explanation.

Accordingly, the ALJ did not err at step five.

//
//
//
//
//
//

# V.
# CONCLUSION

1       IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing the complaint with prejudice.

DATED: October 31, 2016

_____
SHERI PYM
United States Magistrate Judge